Good morning, your honors. My name is Keith Loomis on behalf of the appellant Richard Glover. This is an appeal from a, an interlocutory appeal from a denial of qualified immunity. I think this case presents an interesting issue of the constitutional limitations imposed by the 4th and 14th amendments on the performance of the duties of a public administrator. It is alleged that by entering the residence of a recently deceased person and removing personal property from that residence, that Mr. Glover violated the 4th amendment rights of the heirs of that deceased individual. It is also alleged that as a result of his entry into that house, by not giving notice of his intent to remove property and giving the heirs the opportunity for a hearing, that he again violated their 14th amendment right to due process. And we know under the 4th amendment that a removal of property can constitute a seizure, because under Soldal v. Cook, a seizure occurs if there is a material interference with the possessory rights of an individual. The question I think that's presented in this case is, well, there's a public administrator that's gone into a residence to remove property. That property was last in the possession of a deceased person. I think the whole purpose of providing public administrators the authority to go into a residence where somebody has property. That's why he steps in. Counsel, is it your understanding that the plaintiffs are charging that the very entry into the house was an unreasonable search and seizure? Or is the problem really the disposition, the subsequent, the allegation of a subsequent disposition of the property by the administrator? Well, I think from reading the answering brief in this case, that the respondents are arguing that it is the removal of the property from the house that is the problem. I mean, there is some ambiguity. That the public administrator should have secured a search warrant before he did so? Well, I don't think they've gone as far as to require a search warrant. What they're saying is that the removal of the property under the circumstances was unreasonable. What I'm saying is that a Fourth Amendment violation requires a material interference with possessory rights, with possessory interests in property. And at the point where the public administrator enters that property and removes personal property, no one has possession of it. That's why the public administrator has the authority that he does, to make sure that someone can take care of that property in the interim, while some authority is given to somebody else to take possession of the property. I notice that one of the three children was a trustee under a marital trust. So why wouldn't he, as a trustee, have the possessory rights? Your Honor, as I indicated in the brief, Mr. Richard Mathis was not identified as the trustee of that marital trust until sometime after the public administrator entered the property. He was not the successor trustee identified in that trust. He was appointed as a successor trustee as a result of the actual appointed successor trustee refusing to take, to step into the case. So at the point when Mr. Glover went into the residence to remove personal property, Richard Mathis had no authority over that property either. So I think there's a kind of a... What about the authority over their own property? They allege that they have some of their own property within that residence. Now there's no indication anywhere within the allegations of the pleadings that that was somehow identified as theirs. I mean, Mr. Glover walks into a residence, there's a lot of personal property in there. His obligation is to secure the property for ultimate lawful disposition to others. That property is not identified as this property belongs to that person and this property belongs to the deceased. There's no such indications. The allegation, though, is that he has been notified that there's somebody coming. He's notified that there are people coming to the property and they're going to be there in a couple of days to take care of it. But the property itself has been locked, right? Well, there's an allegation and a complaint that the house was sealed. And sealed. Sealed. And there's notification that the next of kin are coming in the following day. In a couple of days. Well... And they're coming from thousands of miles away. Well... One day. Just one day. He was going in on the 31st and the son was going to be there the 1st. Assuming it was one day. The authority of the public administrator is to go in and secure property even if in his estimation there was no one there to immediately take care of the property. Now, if he says one day is too long, people can still break into the house while it's unoccupied and the property is in the possession of no one and make the decision that in that circumstance it warrants securing the property. Well, why would there be... Wouldn't there be some right to notification before he enters into property? Well, if we step back and look at the public administrator statutes as a whole, in many situations the public administrator is going to have no idea who the heirs are. Now, maybe in particular circumstances of this case he had some idea who they were, but we're looking at constitutional issues and whether they're clearly established. And I think that the level of generality you have to look at is the question of what is the authority of public administrators as a whole? Well, the statute itself says relatively clearly that he's only permitted to go through when there is no relatives of the deceased who are able to protect the property. And we know in this case that the next of kin have already told the deputy that they're on their way. Okay, and they're going to be there within a day. And that the failure to do so would endanger the property. Yes. Well, we know the property's been located, it's been locked up, it's been sealed. The next of kin are on their way. They've told them they're coming the next day. How is it that there's no relatives of the deceased who are able to protect the property? Well, they're not present at the house at the time that the administrator enters the house, and they're not going to be there for another 24 hours. And I would suggest, Your Honor, that even if he violated the state statute, if his interpretation of the statute is wrong, a violation of the state statute does not establish a constitutional violation. We have a question of the state statute versus the Fourth Amendment. Well, isn't this an administrative entry without a prior warrant into the property? Well, it's an entry onto a property of a deceased person. There is no one at the property that has a privacy interest in the property at the time he enters. So I think the question that the court has to look at is not so much what did the state statute authorize as so much as was there a Fourth Amendment violation? The Fourth Amendment says there has to be a violation of an interest in possession. Counsel, didn't the district court grant your clients qualified immunity on the Fourth Amendment question? That's an interpretation that I have made from the order of the district court judge. The responses in this case have interpreted that order differently. And so for purposes of this review, I'm willing to argue what they are saying is still a Fourth Amendment violation. I think that the order can be read to say there is no Fourth Amendment violation for which you're not entitled to qualified immunity. Because this is your appeal. Yes, it is. Your clients were not granted qualified immunity on the due process question. That's correct. Which you haven't addressed. Maybe you want to address that. Yes. Judge, the question under the due process issue is one of whether or not he should have given notice and an opportunity for hearing before he went into that property. Is this a challenge, a facial challenge to the statute? It's not a challenge to the statute. It's a question of whether he violated due process. The response. But if you have to give notice and a hearing, you have to give notice and a hearing in every case, which would be a facial challenge. Absolutely. And I don't read their brief to say that this is a facial challenge. I'm seeing this as a challenge to the particular circumstances of this case. I think under Matthews v. Eldridge, which they are arguing, it should have been a facial challenge that that's the case they want to rely on. Matthews v. Eldridge says we don't look at the particulars of individual cases. What we look at is the procedure as a whole. And in this case, if we were to require notice and an opportunity for hearing, that would defeat the whole purpose of giving the public administrator the authority to go into the property in the first place. He's supposed to secure property where it's in danger of being lost. His job is to secure it so it can be given to the right people down the road. If we tell him, well, you've got to notify the next of kin, and it doesn't say who you're supposed to notify here. I don't understand it to be a facial challenge. Isn't it a challenge to the way your client entered into the property in these circumstances? Well, as I understand the brief from the respondents, what they're arguing is the Matthews v. Eldridge factors, and that relies on a facial challenge to the statutes. How do you have a right to enter into property without giving notice? Well, it requires that there have been some property interest in the person to whom we're supposed to give notice. And in this case, what I'm saying is there has been no identification of a property interest on behalf of the Matthews. They have certain properties they own on those premises. That's true. There are certain property that they allege that they have left in the possession of their father, who is now dead, and has been there. But how is the public administrator supposed to know whose property is on the premises when he enters? Well, he has no way of knowing that. He knows that there's next of kin that are on their way to take this property. So on the face of the complaint, we know the property includes certain firearms. We know the next of kin are on their way. We know that the house has been already sealed. We know that there's no indication that anything is going to be taken. If you accept the complaint as true, he breaks in to steal this. Well, you know what I mean? Steal the property of somebody else. The question of theft is an entirely different question from the question of whether there's been a Fourth Amendment violation or a due process violation. A theft looks at the question, what is the intent of the person who's going into the property? Fourth Amendment looks at the possessory interests of the people that- Well, the allegation is he's gone in without a problem to steal the premises. Isn't there a long line of Supreme Court cases that have said that before you enter into a premises for an administrative purpose, that you have to have some justification for entering into it? Well, we have cases like Camara that tell us that if you're going to do a code enforcement search, that you have to have some type of reason for that, but that ultimately results in some type of law enforcement action. There's no law enforcement action that results from the entry of a public administrator under the premises of a deceased person. Do the plaintiffs have a state claim for conversion here? Yes. They make the claim for conversion? Yes. So, does Nevada have any other provisions that would compensate for theft by a public official? Yes, there's a statute 143060, which says that if somebody steals property of an estate, the person that steals that property is liable for triple damages. So you have a triple damage award in the case of what? Somebody acting under color of state law that steals property? Just anyone that takes property from an estate. Oh, from an estate. Yes. Okay, I'm sorry. I thought you said state. Okay. And they've made that claim as well? Yes. But in this case, there's all kinds of authority, isn't there, that you don't have a right to enter into somebody's premises? Well, there's a For an administrative purpose. For Fourth Amendment purposes, there are circumstances under which you can enter into property without having a warrant of any type. If you want to do a check on the welfare status of an individual to determine whether they're entitled to welfare benefits, a welfare agent is free to go onto the property without any advance notice or warrant or anything. Okay, so they go in, the premises are sealed, they find the father's dead. They go in and seal the premises, and we know that the next of kin have representatives coming. So to conduct some administrative purpose, are you suggesting your administrator has a right to break into any home without some kind of notice that there's problems? To characterize it as breaking in, I think, is inaccurate, because every sheriff deputy in the state of Nevada is required to inform the public administrator of the death of an individual that he comes across during the course of the performance of his duties. The administrator is then supposed to take possession of property if there is no one there to take care for it, and it could be endangered. Now, if that- The local statute's relatively specific, isn't it, in terms of what right he has to go in? And I acknowledge that. I mean, Mr. Glover could see this differently from the statute, but a violation of state statute does not establish a constitutional violation. No, it doesn't. But the state statute, it says, is specific that there has to be no relatives of the deceased who are able to protect the property. And we know the relatives are on their way. And we also know that the failure to do so would endanger the property. Well, there's no indication in this record that there's any threat to the property. In fact, there- Well, Anna, Your Honor, and maybe there is, maybe there isn't. But what I'm saying is that for a constitutional violation to exist, he has to violate, interfere with an interest in possession of property. Nobody has possession of that property in the interim between the death of the person who last possessed it and the arrival of someone who comes to take care of it or take possession of it. So in that interim period of time, the public administrator is authorized to step in. By taking that property, does he violate a Fourth Amendment right? And I suggest that since there is no possessory interest in the property at the time that he steps in, there's no violation of a Fourth Amendment right that is clearly established. And this is an appeal from a denial of qualified immunity, and there are no clearly established Fourth Amendment prohibitions on what Mr. Glover did in this case. Well, how do you deal with the, I mean, the Michigan case, Michigan v. Clifford, that there's a, that there's an expectation of privacy? So- An expectation of privacy in what? Michigan v. Clifford is a, there's a fire at a property. Okay. And, and firefighters go in, conduct an administrative entry into that property. Yes. Put the fire out. They then come back and do an investigation of the property and see certain items. And understand that they had the, they had to obtain a warrant to go back in the second time to look for evidence of arson, a law enforcement issue. And the Supreme Court found that they had no authority to do the entry because of- And, and Your Honor, what I would suggest is that, number one, someone was in possession of those premises at the time the fire occurred and was still entitled to possess it. In this case, the person who was entitled to possess the premises is, has died. And there's no one in possession of premises or entitled to possession of premises until somebody else arrives. And under the state, Nevada state statutes, the person that's entitled to possession of a state property is the executor under the will. And, and he can take possession of property to preserve it, even before he's actually appointed as the executor. But in this case, there was, there was no executor. So your theory is that your administrator has a right to go in and steal any property until the executor's appointed? He absolutely has no right to steal property. That's clear under state law. That's the allegation. That's the allegation, and the question of theft is different from the question of a constitutional violation. There are state remedies available for theft. The question is whether he violated a constitutional provision by, by removing property found on the premises when it's in the possession of no one. The two rights are, the right is to enter onto the property and then the separate is the right to detain the property. Yes. So there's an allegation, isn't there, that certain of these premises were owned by the plaintiffs in this case? There's no such allegation. They, they don't allege that certain of the firearms were owned by them, and that they had left them with their father before his death? They do allege the ownership of some of the personal property, yes. So they have personal property that your client goes in and carries off from their father's home. Yes. So. And, and there are state remedies available for that theft. This is a, this appeal is from a denial of qualified immunity, which is a violation of a constitutional right that is clearly established. I'm saying that, I, acknowledging for purposes of this case that he, he stole a property, does that establish a violation of a clearly established Fourth Amendment right? Well, how about, how do you, United States versus place, Justice O'Connor says that they've got luggage in that case that they detained for more than 90 minutes, and Justice O'Connor holds that that's a constitutional violation. Well, again, Your Honor, that luggage was in the possession of a person. How's that any different? That luggage was in the specific possession of a person. In this case, the last person to have possession of the property is dead. And there's no one else that's going to have possession, and rightfully have possession until the executor steps in and takes possession of it to secure it for ultimate lawful disposition. But in the interim, the only, the only person that has the right to possess it is the public administrator if there's a danger that it could be lost. Well, in this case, what's the danger that it's going to be lost? Unknown. Unknown. We don't know if the neighbor's been aware that the place, that the, Mr. Mathis has died, and he knows that there's things on that property that could be stepped in. We don't know. There's nobody there, and nobody's going to be there for another day. But I don't want to argue the state statute. What I want to address is the constitutional issue of, was there an interference with the right to possession of a possessory interest? Because that's the Fourth Amendment issue. The problem that we have with this is that Goldberg was notified about 6 o'clock at night on the 30th. He hustled over there on the 31st, knowing that one of the sons was going to be there on the 1st. He hustled over there and removed a whole bunch of stuff. Well, I don't know. It seems, at least from a due process standpoint, there's something definitely wrong with that. Judge, I mean, there's clearly under the allegations, there's remedies under state statutes for theft. There are remedies. But the question for your honors is, was there a constitutional violation? How are you going to ultimately win? I'm sorry? How is Goldberg going to ultimately win? Well, we are accepted, the facts set forth in the complaint is true for purposes of this appeal. We don't accept them as true for purposes of trial. But for purposes of this appeal, we accept that as true. But in accepting those as true, has there been a violation of a clearly established constitutional right? And I submit that there has not. Public administrators just can't go in and notify unknown heirs. I'm going to go into the property and secure it. Who's the heirs? In this particular case. Yes. But public administrators as a whole do not. What notice did you give them before you went in? We gave them none. Does the Supreme Court require that before there's a seizure of property, that there be a pre-seizure notification and hearing? Under these circumstances? No. What was the threat? The threat of the why did he need to take possession of the property? What was the threat that prevented you from giving them a pre-deprivation hearing? Well, under the normal circumstance that a public administrator faces, he often has no idea who's involved. No, in this circumstance. In this particular case? What was the pre-deprivation threat that prevented you from giving them notice and some kind of hearing before you went into the property and took it? Well, the question is, when does somebody decide that they're going to go in and take the property before the public administrator gets there? I mean, he's told nobody's present at the house to secure it. The errors are coming from a great distance away. The obligation on the public administrator is to make sure that the property is secured for ultimate disposition to whom it's supposed to go to. Nobody's got possession of it. Under the Hudson case, the Zinnerman case, the Penman case? Yes. Each of those, do citizens have a right to a pre-deprivation hearing? No. The Hudson case, an officer goes into a prisoner's cell, does a shakedown search and destroys some property that he finds in there. There was no obligation imposed by the U.S. Supreme Court that they give notice in advance of going into that cell. Well, in the Zinnerman case, the question of whether an individual has to voluntarily consent, I mean, the doctor that's involved in the Zinnerman case had an authority to accept voluntary commitments to a psychiatric hospital. He had that authority. What did the Supreme Court say in terms of whether they had to give a pre-deprivation hearing? They said that, yes, they need to give a pre-deprivation hearing because How do you distinguish that from the obligation to give a pre-deprivation hearing here? Because the authority of the public administrator is to take immediate action to secure property that may be endangered. That was not an issue in the Zinnerman case at all. That was the question of whether a doctor can accept the voluntary consent from a person who does not appear to have the mental faculty to make a consent. This case is limited. The public administrators have limited authority to act. If there's nobody there to take care of the property, his authority is to step in and take care of it and make sure it's still available when a judge in the estate process decides who it should go to. But he's got the authority to go in there and do that, to preserve it. Zinnerman did not address a situation similar to this at all. The problem is that in this case it makes absolutely no sense at all that when he's notified at 6 o'clock on the 30th and he knows that one of the sons is going to be there on the 1st, that he has to rush over there to protect it on the 31st. It just outside the record. It just doesn't make any absolute sense. Outside the record, the policy of the public administrator is to respond if nobody is available within two hours. That's not in this record and it's not alleged. But he doesn't have better things to do. Well, he's an elected official. His job is to preserve estates. Yeah, but, I mean, didn't he have better things to do to go in and break into a house that's already been sealed? It has coroner seals on it. He has the authority to enter that house. The coroner is supposed to turn over the property to the ---- He says he has authority, but that's not completely clear. Okay. I mean, there's some ---- Under your State law, he only has authority when there's an immediate threat to the property, isn't there? It doesn't say immediate threat. I mean, there's some room to interpret that State statute, but whether or not he violated the State statute is not relevant to the question of whether he violated constitutional right. You keep making the statement that 253.04.05 gives him authority to go in, and doesn't that statute give two conditions? There are no relatives of the deceased who are able to protect the property and failure could endanger the property. Yes. So, absent that? Well, there are no relatives on the property at the time he was informed of the death of the individual. It's in an isolated area in the country. There is a danger that it could ---- that property could be removed. So, under the technical language of that statute, I think he had the authority to do that. Now, we can argue about that, but what I'm saying is, was there a violation of a possessor interest when nobody has possession of the property? That's the Fourth Amendment violation. Okay. Counsel, I think we understand your argument. We will allow you some time. We undoubtedly will have some additional questions for you, so we will allow you some time for rebuttal. Let's hear from ---- Thank you, Your Honor. Let's hear from Mr. Mathis's counsel. May it please the Court, my name is Pala Armeni, and I represent the Appellees, collectively the Mathis family, in this matter. Your Honors, today we're asking this Court to uphold the lower court's decision of denying qualified immunity at this stage of the proceedings for the Fourteenth Amendment argument. We are also asking that you resolve the ambiguity of the order in favor of the Mathis family as well. And I will start off with the complaint has made sufficient allegations, if they're accepted as true, that we have stated a claim for a Fourth Amendment violation as well as a Fourteenth Amendment violation. To begin with the Fourth Amendment, the privacy or the interest in the property, the expectation of privacy comes from, number one, the property, some of that property being in the house belonging to the Mathis sons, their own personal property that was within the house. How is the public administrator supposed to know that? Well, Your Honor, our basis for a Fourteenth Amendment claim is they should have provided notice before they went into the house. Okay, well that would be a due process claim if you want to argue that. But on a Fourth Amendment basis, are you suggesting that the public administrator had an obligation to get a warrant before he goes in? I believe if there's not a sufficient reason to go into the house, then they should have either, there should have been an administrative warrant to go into the house. And that would be a blanket requirement or you're saying if there's exigent circumstances? When would there ever be exigent circumstances for a public administrator to go into a house where somebody has died? Well, in this case, in the cases, if he doesn't fit within the statute, he has no authority to go within the house unless this statute is discretionary. That would be a violation of state law. It might show very poor judgment on his part. Sure. I'm not sure why that gives us a Fourth Amendment violation. Well, Your Honor, specifically to the seizure with a meaningful interference, the appellates have cited the case of Jacobson, which was actually a drug case. But essentially in that case, when that vial was, when the drugs were tested and terminated, the court held that that was a seizure. And then at that point, there should be a balancing of both the privacy and the government interests. Here, some of the property is still missing. So when you're balancing the interest of both the privacy and the privacy interest or the interest of the property of the Mathis family opposed to the government intrusion, there's no, there's no. Here's the problem. Here's the problem that public administrators in general, I know that you've got a claim for conversion here. And if, if Mr. Glover has taken the property, that's inexcusable. Your clients are entitled to, entitled to damages. The, the question is whether, is whether Mr. Glover stands accused properly of violating their constitutional rights. If Mr. Glover had failed to go in on that night and secure property, and in the interim between the time that the coroner sealed up the house and the first son arrived, which was a day or two, somebody had broken into the house and taken the guns and taken the coins and taken whatever else they could find in the house. Mr. Glover, as the public administrator, is going to be criticized by the Mathis family for having failed to secure the house against what most of the statutes refer to as, as, as waste. That is that, that he failed to secure the property of the decedent. That's his job. That's what he's been elected for. Though he, he's caught in a, in a, in a funny situation here, where if he doesn't secure the house and somebody comes in and If he goes in and secures it, and they don't like the fact that he went into the house, then they're going to criticize him as well. What makes it unconstitutional for him to fulfill the responsibilities for which he's been elected? Well, your honor, I think within, that's why we've also alleged the 14th amendment. If notice would have been provided before he went into the house, in this specific case, there was knowledge of who the family members were. A simple phone call to the Mathis family would have indicated, number one, the Mathis family informing him either, whether they wanted him to go in the house or not, or the security that was already put around the house was adequate. At that point, the Mathis family would really have no argument if something was stolen, if they've, but ultimately, the property was in the trust. The property was that of the Mathis family, and if that notice, which due process does require, was given to the Mathis family, the Mathis family could have indicated that there was a trust in place, that there was no need to go into the house because the house was, in fact, sealed off, and that they would be there the following day. So are you making a facial challenge to the statute? A facial challenge, yes, your honor, as far as when there is, this, the state statute is specific, gives two conditions. When there is family known, yes, there's, when there's family known to the public administrator, notice, there is no reason that notice should not be given to that family if it's taken. And the notice has to take the form of, can take the form of just simply a phone call? Your honor, I mean, there is no record, there's. Or are you looking for something more formal? Are you looking for proceeding before a magistrate, some kind of a neutral? No, your honor, we're simply asking for some form of a hearing, which in this case could have simply, or in cases similar to this, could simply be a phone call. The administrative burden for the phone call is far less than, or significantly is lower than giving people their rights. The, or Deputy Ortiz had already contacted the family once. What's to say that at that same time, the public administrator couldn't have also spoken to the family, and these arrangements could have been made, or this conversation could have taken place. But simply, Matthews requires some form of hearing. Clearly, a full administrative hearing, a full trial, a full magistrate hearing could not have taken place. We recognize that. However, in this specific case, a telephone call would have sufficed to give notice, and then the opportunity to be heard on the matter before he decided to go into the house and take the property. Similar to the cases where in Zinnerman and Amadeus, those are cases where it  is a claim that the administrator was acting pursuant to the statute. Nevertheless, the court has recognized that where pre-deprivation hearing is not impossible, it must be given. Glover is trying to argue that this was some sort of emergency situation, and therefore, he couldn't, he didn't have the time to give this pre-deprivation hearing, but that's simply not true. We know that he got the phone call on May 30th of 06 at around 6 o'clock. We know that he went into the house, or we assume he went into the house the following day. We're not sure what time he went in. That could have been 6 o'clock the next day. It could have been 11 PM the next day. He certainly can't argue that he's waited, and by the actions of Deputy Ortiz, it is apparent that this was not an emergency situation, as Deputy Ortiz waited 24 hours before he even contacted Glover, and then, for argument's sake, Glover could have waited another 24 hours before he entered the property. So he certainly cannot argue that this was an emergency or an extingent circumstance where he, in fact, could not give any sort of pre-deprivation hearing. And whether it's clearly established, somebody in Mr. Glover's position would have reasonably known, based on these circumstances, a reasonable official in this situation confronted by these specific facts, that going into that house without notice would have been improper and would have violated the 14th Amendment right to due process. Your Honor, I actually don't have any more. I would like you to address the Fourth Amendment question. Absolutely. At the top of your argument, you asked that we clarify the ambiguity. I read the district court's order to grant qualified immunity on Fourth Amendment. I realize that both of you have some questions as to how the order should be read. So why don't you tell us what you think the district court did. Certainly. I believe, quite candidly, that the order from the district court may be a little bit clearer as to the cert part of it. I don't think it's very clear as to the seizure part of it. I don't know why a motion to clarify wasn't brought up earlier with the district court to clarify all of this. But as to the seizure, the meaningful interference, as I would state in that case of Jacobson, once that property is destroyed, where essentially some of the property here has been taken and has not been seen, so I think we can equate the destruction of property to property never being seen again, there is a reasonableness at the time the intrusion existed, I apologize, that that is a seizure. And the reason that's a seizure is because you balance the government interest versus the privacy. Let's agree that taking the property out of the home is clearly a seizure. The problem that your clients have identified is that at some point after it was seized, when it should have been taken and put into a secure facility and inventoried, that some of the stuff wasn't properly inventoried, and your claim is that Glover simply went and sold it at auction for his own benefit. He stole it. And I'm having a difficult time understanding why that comes within the Fourth Amendment. Make them within a lot of other things, including the Nevada Conversion Statute, but I'm having a difficult time understanding why that is a seizure of property. It's clearly conversion. It's just outright theft if your allegations are correct. But if the district court's granted qualified immunity with respect to the search, and you didn't appeal that, then why doesn't that also apply to the seizure, which occurs at the same time? Your Honor, and I will give you the example. The appellate – I'm about to run out of time, if I can answer. You're over your time. I'm – that's okay. I've extended it. I apologize. Okay. Thank you. I'll give you the example of Bonds v. Cox, which the appellates did argue in the lower briefs below. That's a Sixth Circuit case. And in that case, the court found that there was no subjective privacy because the lady, Ms. Bonds, did not actually live in the house. So the court said there can't be that kind of expectation of privacy in the house because she doesn't live there. However, when they came in to the house and destroyed property or – either destroyed property or hurt property that was within the house, the court did say that was a seizure and that she could proceed forward with her Fourth Amendment claim on that ground, on the seizure ground. Okay. One last question, just for clarification. Are you contending that this statute is unconstitutional under either the Fourth or the Fourteenth Amendment? We're arguing that it's unconstitutional under both. On its face, it's unconstitutional. It is. I had one question about the trust. Normally, these marital trusts provide for the successor trustee within the trust instrument. Is that not the case here? No, Your Honor. It was the case. In this situation specifically, Mr. Richard Mathis was actually the third successor. The first successor of the trust was actually – had passed away. The second successor of the trust decided that she did not want to be the trustee, and then that's when Mr. Mathis, Richard Mathis, became the actual trustee. The trust was in place the entire time when Mr. Glover – So that was all within the trust itself, huh? Yes, Your Honor. Okay. So I guess he wasn't the trustee at the time that this occurred. Your Honor, he was not the trustee, but the trust was in place. Obviously, there is going to be some lapse of time before a trustee takes the reins of a trustee. To not revert it back would allow a time period where people could basically go in and steal from the dead at that point. Thank you. Thank you, Ms. Armendi. Mr. Lemus, we had a thorough discussion with you. I will allow you a minute if there's something in particular that you think the Court needs to hear. Just in response to Justice Huggs' question, he became the trustee as a result of a special hearing conducted in the Third Judicial District Court in Errington. He was not a successor trustee appointed in the trust. He had to petition the Court to be appointed as a successor trustee, so he had no authority at the time. The only other thing I would say is the respondents concede that this is a facial challenge to the statute, not to the specific circumstances of this case. We don't look at the specific conduct that occurred in this case in addressing a facial challenge. It's the public administrators as a whole and their authority to act under the statute that's being challenged in a facial challenge. And whether Mr. Glover knew the identity of these particular errors is irrelevant to that question of the facial challenge because public administrators in general are not going to know who the errors are. And so with that, I think this is an interesting question of Fourth and Fourteenth. I think your Honors have found it interesting. I appreciate it. Thank you very much. Thank you, Mr. Lemus. We thank the insightful arguments of both counsel. And Mathis v. Glover will be submitted.
judges: Gwin, Hug, Bybee